UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 17-105-DCR |
| V. | ) ) | |
| REYNALDO PINEDA DUARTE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Reynaldo Pineda Duarte is serving a 120-month term of imprisonment at Correctional Institution, Big Spring. Duarte's sentence followed his 2017 plea of guilty to manufacturing over 1,000 marihuana plants in violation of 21 U.S.C. § 841(a)(1). [Record Nos. 1, 29] His anticipated release date is January 18, 2026.[1] Duarte has now filed a motion for compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c). [Record No. 86] The defendant's motion will be denied for the reasons outlined below.

**I.**

Duarte is a Mexican national who was unlawfully present in the United States at the time of his offense. He was previously subjected to removal orders after being detained in Texas and California. The instant offense stemmed from an investigation by Kentucky State Police ("KSP") into a marihuana-growing operation in Clark County, Kentucky. The KSP began surveilling the area in early July 2017.

---

[1] *Inmate Locator,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed Feb. 3, 2021).

On July 12, 2017, officers entered the area to service surveillance equipment and encountered Duarte tending to the marihuana plants. The officers surrounded Duarte and announced their presence. Duarte responded by swinging a shovel in the officers' direction, but then dropped the shovel and attempted to flee. He was detained and later indicted for violating 21 U.S.C. § 841(a)(1).

Duarte's Presentence Investigation Report ("PSR") noted that the statutory minimum penalty for his offense was 120 months. [Record No. 62, p. 8]; 21 U.S.C. § 841(b)(1)(A). However, he sought relief from the mandatory minimum under the limitation provided in United States Sentencing Guideline § 5C1.2 ("the Safety Valve"). That provision states that the mandatory minimum sentences contained in section 841 shall not apply where the defendant meets five criteria listed in 18 U.S.C. § 3553(f). U.S.S.G. § 5C1.2. Because Duarte had no criminal history points, his offense did not result in death or bodily injury, he had not undertaken a leadership role, and he had been truthful in his conduct with the Government, four of the five criteria were uncontested. *See id.*; [Record No. 55, p. 13].

However, the Safety Valve factor requires that the defendant did not "use violence . . . in connection with the offense." U.S.S.G. § 5C1.2(a)(2). Duarte's PSR contained a two-level enhancement for the use of violence because he swung the shovel in the officer's direction. During the sentencing hearing, the Court overruled Duarte's objection to the enhancement, reasoning that swinging a shovel at an officer "qualifies as a threat or attempted use of violence." [Record No. 64, p. 8] On appeal, the Sixth Circuit reversed, finding that the Court failed to find that Duarte's act was *violent*, meaning accompanied by the requisite intent to injure the officers. *United States v. Pineda-Duarte*, 933 F.3d 519, 524-25 (6th Cir. 2019).

After the remand, the Court received briefing on the issue and took it up at the resentencing hearing. Duarte contended that he waved the shovel reflexively when he was startled by the KSP officers. [Record No. 76, pp. 4-5] The Government presented the testimony of one of Duarte's arresting officers, who testified that he charged Duarte with third-degree assault under Kentucky law because he believed Duarte intended to injure him with the shovel. [Record No. 75, pp. 2-3] The undersigned ultimately concluded that a preponderance of the evidence supported the conclusion that Duarte intended to injure the officers. Thus, the two-level enhancement was proper, the Safety Valve did not apply, and Duarte was subjected to the mandatory-minimum sentence contained in 21 U.S.C. 841(b)(1)(A). He did not appeal.

## II.

When a defendant files a motion for relief under 18 U.S.C. § 3582(c), district courts "face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction."[2] *United States v. Hampton*, --- F.3d ---, No. 20-3649, 2021 WL 164831, at *1 (6th Cir. Jan. 19, 2021). Although the policy statements contained in U.S.S.G. § 1B1.13 purport to define extraordinary and compelling reasons for a sentence reduction, courts are not required to consult them because they were promulgated under a statutory scheme that did not contemplate prisoner-filed motions under § 3582(c). *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020).

---

[2] A prisoner may file a motion for a sentence reduction "after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). Duarte, through counsel, requested release from Warden B. Thompson on September 29, 2020. [Record No. 86-1, pp. 7-8]

Thus, in answering the first question, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1109).

Here, the answer to both questions is "no." More specifically, Duarte has not shown an extraordinary and compelling reason for a sentence reduction, and the sentencing factors listed in 18 U.S.C. § 3553(a) do not favor a reduction.

### A.     Extraordinary and Compelling Reasons

Duarte's asserted reasons for a sentence reduction are insufficient. He contends that he suffers from three medical conditions—dyslipidemia (high cholesterol), osteoarthritis, and pre-diabetes—that increase the risk of a severe COVID-19 infection, should he become infected. [Record No. 86, pp. 1, 7] This medical "vulnerability," when combined with the fact that all prisoners have a "heightened risk of contracting COVID-19," allegedly constitutes an extraordinary and compelling reason for a sentence reduction or immediate release. [*Id.* at pp. 4-5] The Court makes the following observations regarding this first point.

First, while Duarte is correct that medically-vulnerable individuals are generally more susceptible to COVID-19, his medical conditions are not among those identified as risk factors by the Centers for Disease Control.[3] He does not allege that any of these conditions are chronic in nature, nor does he suggest they reflect a compromised immune-system. Duarte objectively appears to be a 57-year-old male of average weight that suffers from common, manageable

---

[3]     *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Dec. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

medical conditions. Thus, there is little support for his claim that he is at high risk of severe infection, should he become infected.

Second, Duarte has not demonstrated an extraordinary and compelling reason for a reduction as far as the policy statements are concerned. Although the Court is not bound by them, the policy statements provide a useful framework for analyzing a defendant's asserted grounds for relief. They are particularly helpful where, as here, the defendant expressly relies on U.S.S.G. § 1B1.13 as a basis for relief.

Duarte contends that he suffers from "a serious physical illness 'that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" [Record No. 86, p. 8 (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I))] This Court has interpreted the policy statements to require that a defendant is currently suffering from a debilitating medical conditions that is unmanageable within the environment of a prison. *See United States v. Cundiff*, 2020 WL 4949692, at *2 (E.D. Ky. Aug. 24, 2020). Duarte makes no such allegation here. Instead, he merely contends that he has limited access to personal cleaning supplies, and this fact diminishes his ability to avoid COVID-19. [Record No. 86, p. 8]

Under the policy statements, the defendant's "ability . . . to provide self-care" must be diminished *by the* "serious physical or medical condition," not the other way around. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Moreover, Duarte's medical records indicate that his *current* conditions are managed well by BOP medical staff. As recently as November 10, 2020, Duarte had "No Complaints" to report to medical staff about his current treatment. [Record No. 86-1, p. 1] And this Court has declined previously to expand the definition of "extraordinary and compelling reasons" to include hypothetical fears about contracting a future, potentially

unmanageable illness. *See United States v. Abney*, 2020 WL 7497380, at *2 (E.D. Ky. Dec. 21, 2020).

Third, Duarte invokes the Court's discretion to define extraordinary and compelling circumstances, but he fails to provide a compelling reason to exercise that discretion. He argues at length that incarcerated individuals are unable to avoid "contracting COVID-19 simply because they are incarcerated." [Record No. 86, pp. 5-7] However, there are few active cases of active infection at his facility of incarceration.[4] And the Bureau of Prisons has undertaken substantial measures to limit the spread of COVID-19 within its facilities.[5] Moreover, although no doses have been delivered to Duarte's facility, the BOP has vaccinated over 36,000 federal inmates and employees as of February 5, 2021, and its work in this regard is ongoing.[6] Therefore, the undersigned does not agree that simply being imprisoned is an extraordinary and compelling reason for a sentence reduction.

---

[4] Big Spring Correctional Institution houses over 1,500 inmates. *CI Big Spring (Flightline)*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/ci/bsf/ (last accessed Feb. 4, 2021). While over 700 inmates have been infected and recovered since the pandemic began in March, only six inmates and eleven employees are currently infected with COVID-19. *Covid-19 Coronavirus*, FEDERAL BUREAU OF PRISONS (updated Feb. 4, 2021), https://www.bop.gov/coronavirus/.

[5] *BOP Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Feb. 4, 2021).

[6] The BOP is presently working with the CDC and a public-private partnership established by the federal government, known as Operation Warp Speed, to ensure that the BOP remains prepared to administer the COVID-19 vaccine to inmates as soon as it is available. Doses of vaccine have been delivered and distributed at over 48 facilities, and over 90% of distributed doses have been administered. *Covid-19 Coronavirus*, FEDERAL BUREAU OF PRISONS (updated Feb. 4, 2021), https://www.bop.gov/coronavirus/.

### B.      The § 3553(a) Factors

Even if Duarte had alleged an extraordinary and compelling reason for a sentence reduction, the Court will deny that request where the factors listed in 18 U.S.C. § 3553(a) counsel against a reduction. *See United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). "Section 3553(a) blankets a vast terrain of sentencing factors, such as the nature of the offense, the characteristics of the defendant, and numerous penological objectives." *Jones*. 980 F.3d at 1114.  The Court has a duty to "consider all relevant § 3553(a) factors before rendering a compassionate release decision," but it does not have to reweigh the factors where its determination at sentencing remains supported by the "whole record." *Id.* at 1114-15. Importantly, where a defendant fails to "argue that his personal circumstances—beyond the COVID-19 outbreak—ha[ve] changed," the Court is not required to "weigh the § 3553(a) factors differently than it had at the original sentencing." *United States v. Navarro*, --- F.3d ---, No. 20-5640, 2021 WL 287756, at *3 (6th Cir. Jan. 28, 2021).

The sentencing factors do not counsel in favor of a reduction in this case. Duarte's "primary" contention is that the "high risk the COVID-19 pandemic presents to Mr. Duarte in particular" has rendered his sentence unjust and unreasonable. [Record No. 86, p. 10]  Even assuming this is a "characteristic[] of the defendant" that favors a reduction, it would not alter the Court's prior consideration of the relevant factors. 18 U.S.C. § 3553(a)(1). Duarte's sentence was a *mandatory minimum* term of imprisonment for his crime. *See* 21 U.S.C. § 841(b)(1)(A). During the resentencing hearing, the undersigned concluded that the mandatory minimum was sufficient, but not greater than necessary, to meet the objectives of section 3553(a). The mere existence of COVID-19 does not persuade the Court that 120 months' imprisonment is excessive.

Duarte's remaining arguments are largely an attempt to relitigate his eligibility for Safety Valve relief. He contends that, "but for the 'violence' enhancement," he would have only mitigating characteristics. [Record No. 86, pp. 10-11] But the Court cannot simply overlook a prior conclusion that Duarte intended to injure his arresting officers. The section 3553(a) factors direct the Court to consider "the nature and circumstances of the offense," the "seriousness of the offense," and the need to "promote respect for the law." 18 U.S.C. § 3553(a)(1)-(2). Duarte's offense was very serious—he cultivated over 1,000 marihuana plants—and his conduct during his arrest reflected a disrespect for law enforcement.

Finally, the Court commends Duarte for utilizing his time while imprisoned to pursue an education, rehabilitation, and grow his personal and professional skills. But these positive developments, if true, do not change the fact that his sentence remains necessary to effectuate the goals of section 3553(a). Accordingly, it is hereby

**ORDERED** that Defendant Reynaldo Pineda Duarte's motion for compassionate release or a sentence reduction [Record No. 86] is **DENIED**.

Dated: February 5, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky